IN THE TAX COURT OF THE
STATE OF OREGON

Harry L. LYDIARD
*v.*

DEPARTMENT OF REVENUE

(TC 4003)

Plaintiff (taxpayer) appeared *pro se*.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for defendant rendered March 5, 1997.

### CARL N. BYERS, Judge.

Plaintiff (taxpayer) appeals from the denial of a capital loss deduction for his personal income taxes for 1976. Although the deduction has ramifications for a number of tax years, this appeal concerns only the nature of the property sold.

## FACTS

Taxpayer is a resident of Washington but grew up in Medford, Oregon. When his father died in 1973, taxpayer and his sister each inherited a one-half interest in farmland located near the intersection of Interstate Five and Crater Lake Highway. The parties recognized the development potential of the property. Taxpayer's sister's husband, William Siebert (Siebert), had a business relationship with a Thomas Bowie (Bowie). Bowie urged taxpayer and his sister to place the property in a development corporation. Lydiard Development Corporation (LDC) was incorporated November 25, 1975. Taxpayer became the president of the corporation, his sister became treasurer, and Siebert and Bowie became vice presidents. Four thousand shares of common stock were issued, 2,000 to taxpayer and 2,000 to his sister.

The corporation did not observe all the procedures or formalities required. Nevertheless, taxpayer acknowledges that the corporation was validly formed. The only meeting taxpayer attended was an organizational meeting in Medford. Taxpayer's residence in Washington and his other interests hindered him from participating in the corporate planning and decision making. In his absence, the other officers executed an agreement to exchange the property inherited from taxpayer's father for property owned by Sutton Industries. A written agreement for this exchange was executed on April 12, 1976, without taxpayer's knowledge.

On April 22, 1976, Bowie telephoned taxpayer. After some discussion, taxpayer orally agreed to sell Bowie his one-half interest in the real property for $350,000. The terms of the sale called for a 10-year contract with principal payments of $35,000 per year. Taxpayer knew that the sale of real estate required a written agreement, and he expected Bowie to have one prepared and sent to him. Taxpayer later learned the other officers of LDC had agreed to exchange the inherited property for property owned by Sutton Industries. Taxpayer's sister then asked him to sign a deed conveying the inherited property to LDC. Against his own attorney's advice, taxpayer signed the deed on May 8, 1976. At the time, taxpayer felt he was no longer involved in the corporation and believed Bowie would honor his agreement to buy taxpayer's

one-half interest in the land. LDC and Sutton Industries then exchanged ownership of the real properties.

In January 1977, taxpayer's sister, Siebert, and Bowie flew to Washington and presented taxpayer with a stock sale agreement. Under the agreement, Bowie would buy taxpayer's 2,000 shares in LDC. The stock sale agreement contained terms similar to taxpayer's earlier agreement for the sale of his land to Bowie. It provided for a sale price of $360,000 with $35,000 down and $35,000 per year, plus interest, with a provision for adjusting the price based on increases in the consumer price index. Taxpayer signed this agreement. The stock sale agreement was secured by a stock escrow agreement.

Taxpayer had been uneasy concerning the corporate transactions, but was unable to uncover any deceptions or problems until it was too late. Bowie did not make any payments on the stock sale agreement and LDC eventually became insolvent. Taxpayer does not know what happened to the real property owned by LDC. Taxpayer sued Bowie under the stock sale agreement for $360,000 plus interest. Bowie stipulated to a judgment in that case, but then disappeared. Taxpayer quickly recognized that he would never be able to collect on the judgment and deducted the loss. It is that loss which is the subject of this appeal.

■ The parties have stipulated that the sole issue before the court is whether taxpayer suffered a loss from the sale of inherited Oregon real property or suffered a loss from the sale of stock of an Oregon corporation. The distinction is important because ORS 316.127(2)(a) permits nonresidents to deduct losses resulting from the disposition of real property in Oregon. Nonresidents may deduct losses from the sale of stock only if the stock is employed in the nonresident taxpayer's trade or business in the state. ORS 316.127(3); ORS 316.127(4); and OAR 150-316.127(b)(1)(a). Taxpayer does not contend that the stock was related to his trade or business in Oregon.

■ Regrettably, the court must find that taxpayer's loss is attributable to the sale of stock, not to the sale of Oregon real estate. It appears taxpayer's vision and thinking were

clouded by family relationships and deception. Although taxpayer orally agreed to sell the real estate to Bowie, he admits no written agreement was ever consummated. Bowie never made any payment, and there was no part performance of the oral agreement. More important, not long after Bowie and taxpayer agreed on the sale of the property, taxpayer deeded the property to his own corporation. This action was inconsistent with his oral agreement to sell the property to Bowie.

Taxpayer may have believed that the formalities of the corporate organization were unimportant. However, the evidence all around him indicated that such formalities were important. This was emphasized when taxpayer's sister and Bowie pressured him to sign the deed transferring the land to the corporation. Another high point occurred when all three officers traveled to taxpayer's residence in Washington to obtain his signature on the stock sale agreement.

Under the written stock sale agreement, taxpayer agreed to sell 2,000 shares in LDC to Bowie. Taxpayer acknowledges that without the real estate in the corporation, the 2,000 shares of stock were virtually worthless. Because Bowie agreed to pay $360,000 and taxpayer expected to receive $360,000 for the stock, both parties must have understood that the land was owned by the corporation and not by taxpayer. Moreover, by the time the stock sale agreement was signed, LDC no longer owned the land taxpayer orally agreed to sell to Bowie. It owned the land obtained in the exchange with Sutton Industries.

Under these circumstances, the court must find that taxpayer suffered a loss from the sale of stock of an Oregon corporation and not from the sale of Oregon real property. The department's Opinion and Order No. 95-4194 must be sustained. Costs to neither party.